(No. 4993-)

JOSEPH KARULSKI, Administrator of the Estate of ADELLA KARULSKI, Deceased, Claimant, *vs.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Respondent.

*Opinion filed April 7, 1966.*

DOWD, DOWD AND DOWD, Attorneys for Claimant.

RAYMOND, MAYER, JENNER AND BLOCK, Attorneys for Respondent.

PEZMAN, J.

This is an action brought by Joseph Karulski, as Administrator of the Estate of Adella Karulski, deceased, against the Board of Trustees of the University of Illinois under the Illinois Wrongful Death Act, 1961 Ill. Rev. Stats., Chap. 70, Sec. 2, and the Court of Claims Act, 1961 Ill. Rev. Stats., Chap. 37, Sec. 439.8.

The facts of this case are as follows:

Approximately twenty-five years ago, when she was nineteen years old, Adella Karulski sustained head injuries in an automobile accident. After the accident she began experiencing severe head pains. About 1947, Mrs. Karulski began to have fainting spells. Between 1947 and May of 1960, Mrs. Karulski experienced six such fainting spells, several of which lasted approximately eight hours each. During this thirteen year period Mrs. Karulski received various treatments for her headaches and fainting spells, including operations, and radiation treatments.

By 1958, the headache pains had become so severe that they could only be relieved by increasingly larger doses of Levodromoran, a narcotic. Eventually Mrs. Karulski became addicted to Levodromoran. Her physician refused to give her any more, and referred her to the University of Illinois Research Hospital.

Mrs. Karulski was admitted to the University of Illinois

Research Hospital on July 27, 1960 at about 1:00 P.M. At the time she was anxious, but in no distress. The admitting diagnosis was "Cushing's syndrome." Mrs. Karulski was placed in Medical Ward 10 under the care of Dr. Alf Tannenberg.

On July 28, 1960, Mrs. Karulski complained of a headache, and wanted her "medication." Later that afternoon Mrs. Karulski told nurse Blackburn that, if her headache was not relieved, she would jump out of the window. As a result of this threat, Mrs. Karulski was transferred to a screened room, placed in restraints, and a psychiatric consultation ordered.

Mrs. Karulski was examined by two psychiatrists, Drs. Mary Samos and William J. Piper. After talking to Mrs. Karulski on July 28, 1960, Dr. Samos concluded she was having a withdrawal reaction from the narcotic addiction. She recommended that a narcotic be reintroduced, and a gradual withdrawal made. Dr. Tannenberg concurred with Dr. Samos' diagnosis. Dr. Piper noted that Mrs. Karulski was depressed and discouraged, but, in his opinion, was not psychotic or a suicide risk.

On July 30, 1960, a narcotic was reintroduced, and a program of gradual withdrawal begun. On July 31, 1960, Dr. Reynolds ordered the restraints removed, Mrs. Karulski's ward privileges were restored, and she was allowed to go about freely in the ward. Dr. Piper concurred in the judgment that there was no further reason to keep Mrs. Karulski under restraints.

The withdrawal program was successful, and by August 5, 1960, in the opinion of the doctors and nurses treating her, Mrs. Karulski was much improved. On the morning of August 6, 1960, Mrs. Karulski was given a tranquilizer. Later that morning she complained of difficulty in breathing. She

was examined by Dr. Tannenberg, and advised that there was nothing wrong with her.

At about 10:00 o'clock on the morning of August 6, 1960 Mrs. Karulski jumped or fell from the tenth floor window of the sun porch where she had gone alone. The record in this case indicates that there were no witnesses to the acts of Mrs. Karulski on the sun porch, which resulted in her death.

The Court desires to voluntarily state that the doctrine of res ipsa loquitur does not apply to this case. Claimant does not urge its application in his complaint or brief. Conditions usually stated as necessary for the application of the principle of res ipsa loquitur are three: (1) the accident must be a kind, which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. With the question of whether Mrs. Karulski accidentally fell or intentionally jumped from the window on the sun porch unanswered by the evidence in this case, and the mental state of Mrs. Karulski at issue, the Court feels that the three conditions set forth above for the application of the doctrine of res ipsa loquitur have not been satisfied.

In his complaint, claimant appears to set forth two separate hypotheses concerning the death of Mrs. Karulski, for which claimant seeks to recover damages. Claimants first hypothesis, or theory, is that respondent was negligent in failing to prevent Mrs. Karulski from committing suicide when her propensity to commit suicide was known, or by the exercise of ordinary care should have been known to respondent.

Claimant's second hypothesis, or theory, is that Mrs. Karulski accidentally fell out of the window, as a result of tripping or stumbling, and that respondent was negligent in

failing to keep and maintain proper retaining screens or bars on the windows of the hospital for the protection of patients in the hospital from falling from said windows.

The Court will consider claimant's second hypothesis first. It raises a question of fact, which claimant fails to answer. In fact, claimant's brief and the testimony elicited from claimant's witnesses appear to be based solely on and directed toward the substantiation or proof of claimant's first hypothesis, namely, that Mrs. Karulski committed suicide. Claimant did not consistently pursue his second hypothesis, and has failed to prove the same by a preponderance of the evidence.

The Court will now consider claimant's first hypothesis. In order to recover damages for the death of Mrs. Karulski, claimant must prove by a preponderance of the evidence that respondent failed and neglected to render the degree of care owed to Mrs. Karulski as a patient in the University of Illinois Research Hospital. Having proved that respondent failed to render the degree of care owed Mrs. Karulski as a patient, claimant must also prove by a preponderance of the evidence that Mrs. Karulski was not guilty of contributory negligence.

In *Mounds Park Hospital* vs. *Von Eye*, 245 F. 2d 756 (1957), the court held that a hospital is not an insurer of a patient's safety, but owes the patient the duty of protection, and must exercise such reasonable care as the patient's known condition may require. In *Peterson* vs. *State of Illinois*, 22 C.C.R. 381, this Court recognized and reaffirmed the rule that the extent and character of the care, which a hospital owes its patients, depends on the circumstances of each particular case. However, this rule is limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen.

The principal question in the case at bar is whether

respondent hospital took reasonable precautions, and exercised reasonable care for Mrs. Karulski's safety following her suicide threat to nurse Blackburn on July 29, 1960. Immediately after the threat of suicide Mrs. Karulski was transferred to a screened room, and restrained. Two trained psychiatrists, Dr. Samos and Dr. Piper, were called, and both examined Mrs. Karulski. It was the opinion of the two psychiatrists, based upon their examination of Mrs. Karulski, that she was suffering a withdrawal reaction from a narcotic addiction, and, while depressed and discouraged, she was not psychotic or a suicide risk. Mrs. Karulski responded quickly to the treatment administered, which consisted of a program of gradual withdrawal from narcotic addiction, and the administration of certain tranquilizing drugs.

By July 31, 1960, it was the opinion of the two psychiatrists, concurred in by the physicians and nurses who had been treating, and who continued to treat Mrs. Karulski on a day to day basis, that the risk of suicide, if any had ever existed, was gone, and it was considered by them safe to permit her to resume the normal status of a patient in the ward. As the days progressed Mrs. Karulski's condition, in the opinion of the hospital personnel, continued to improve. Mrs. Karulski's husband and son both testified that Mrs. Karulski had never expressed any intention or desire to take her own life. From all outward signs there was apparently no reason to anticipate that Mrs. Karulski would commit suicide.

It is the opinion of this Court that claimant has failed to prove by a preponderance of the evidence that respondent failed to exercise the degree of care owed Mrs. Karulski. It is our opinion that respondent took all reasonable precautions with regard to Mrs. Karulski's safety, and rendered that degree of care owed Mrs. Karulski as a patient.

Claim is, therefore, hereby denied.